In the Matter of the Estate of Leon Cohen, Deceased.*

Surrogate's Court, Kings County, February 14, 1934.

*Edward S. Frith,* for the executors.

*Harry M. Peyser,* for the State Tax Commission.

Wingate, S. The question reserved in the former decision of this court (150 Misc. 17) respecting the sum which would be a " reasonable charge or expenditure for the perpetual care of the

---

* See, also, 150 Misc. 17.

decedent's burial lot," within the provisions of section 216 and of subdivision 3 of section 314 of the Surrogate's Court Act, is now submitted for determination upon a stipulation and certain affidavits respecting the circumstances surrounding the place of his burial and the cost of upkeep thereof.

The family plot measures nineteen feet eight inches by seventeen feet six inches. Decedent and his wife are buried together in one portion thereof and four other interments have already been made therein. Places for six graves are vacant. The center of the plot is occupied by a joint monument applicable to all and each grave has its own marker, that at decedent's being a double granite stone. There is a fence in front of the plot with two bars which together with a bench, need annual painting.

The expense for ordinary cleaning amounts to ten dollars per year; resodding costs four dollars and ivies five dollars per grave. " The cost for repairing and washing down monuments, extra weeding, extra sprinkling, painting, is determinable only by the extent of work necessary and the current costs of the same at the time such work was done." The secretary of the association estimates that the entire income from the fund would be necessary for perpetual care of the plot averaged over a period of years.

Under the stipulation by which the matter is submitted for determination, this evidence is wholly uncontradicted.

As is shown by the map submitted, the portion of the plot in which the decedent is interred is approximately one-third of the entire occupied area. It is, of course, possible that the places for other graves therein may at some time be occupied, but there is no assurance that this will occur and decision must be made on the basis of presently existing conditions.

It seems obvious on a logical basis that no sum is properly payable as a funeral expense of the decedent which is not requisite for the remains of the decedent himself. (*Matter of Smallman,* 138 Misc. 889, 893; *Matter of Gavey,* 147 id. 332, 335.) If the amount which will be required for the upkeep of the entire plot is the income from $4,000, as stated in the uncontroverted affidavits submitted, and the space occupied by the testator is one-third of the entire occupied portion of the plot, which is demonstrated, it follows that the reasonable requirements in this regard applicable to testator himself would be approximately one-third of the total, or the income from $1,333.33.

The question then arises as to whether such an expenditure for this purpose is reasonable in view of the size of the estate of the decedent. The net estate left by him, after payment of debts, amounted to $31,615.30. Whereas the language of subdivision 3

of section 314 indicates a legislative intent that the question of reasonableness of the sum for perpetual care shall be determined on its own basis alone, it may not be inappropriate to note that $445.30 was also expended for undertaking and $250 for a grave marker, which, if the hypothetical $1,333.33 were allowed for perpetual care, would bring the total of expenditures under section 216 to $2,028.63, or six and one-tenth per cent of the net estate.

In view of all the circumstances here demonstrated, the court is of the opinion that such sum is far from unreasonable.

The final step in the decision is the ascertainment of the present value of the sum which the decedent desired to have used for this purpose. The testamentary direction respecting the sum payable for perpetual care is contained, as was noted in the former opinion herein, in the fifth or residuary item of the will, by which the erection of a trust for the lives of testator's wife and son was directed. This provided that upon the death of the wife, the son surviving, $1,000 should be paid for cemetery care, and upon the death of both, an additional sum sufficient to make up $4,000 should be paid. According to the appraiser's report, the wife was sixty-eight years of age, and the son thirty-six, at the time of testator's death. The American experience tables of mortality indicate an expectancy of life for the widow of nine and forty-seven one-hundredths years, and of the son of thirty-one and seven one-hundredths years. Since the first $1,000 of the remainder for cemetery care was presumptively payable on the death of the wife, nine and forty-seven one-hundredths years subsequent to the death of the testator, its value as of testator's death was $526.50. Similarly, the additional $3,000 payable on the death of both wife and son was then worth $849.60, giving a total of $1,376.10 for both payments. This is only $42.77 more than the amount hereinbefore attained on the basis of the evidence submitted as a reasonable allowance. This discrepancy is negligible.

The court, therefore, determines on the facts of the case as herein presented, that the remainder directions in the will for payments for the perpetual care of testator's burial plot amounted merely to the expression of a desire on his part respecting the mode of defraying the expenses classed as funeral expenses under section 216 and subdivision 3 of section 314 of the Surrogate's Court Act; that the value as of the date of death of the amounts specified was " reasonable " within the contemplation of these sections, and that they are to be treated as a part of the payments for funeral expenses and are, therefore, not subject to tax.

Proceed accordingly.